NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued and submitted May 22, 2020[*]
Decided May 27, 2020

Before

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

| | |
|---|---|
| Nos. 18-2737 & 18-3348 | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | |
| *v.* | No. 15 CR 399 |
| THEODORE J. WOJTAS, JR., and DAVID W. BELCONIS, *Defendants-Appellants.* | Manish S. Shah, *Judge.* |

## Order

Vince Manglardi and Theodore Wojtas borrowed about $70 million to purchase an apartment complex, which they planned to convert to condominiums. The lender insisted that they meet benchmarks on sales. When the units did not sell at the necessary rate, Manglardi and Wojtas concocted a scheme to create the appearance but not the reality of sales.

---

[*] The parties' joint motion to waive oral argument in No. 18-2737 was granted on May 8, 2020. The other appeal was orally argued.

They told potential buyers that a fund worth $100 million wanted to assemble interests in the units, and that all they had to do was pretend to buy a unit and tell a bank that they had made a substantial down payment, planned to live in the unit, and would meet monthly mortgage obligations. Manglardi and Wojtas assured these people that the "$100 million fund" would take care of the down payment (or pay it back, if one had been made) and cover the first three years of mortgage payments, after which it would repurchase the condo unit at a profit for the passive "investor" (a word we put in scare quotes, because the straw buyers did not actually invest any money). In fact the "$100 million fund" was fiction. All money used for down payments or mortgage payments was skimmed from the value of the loans against the condo units. Manglardi and Wojtas kept the rest, after expenses. The lending banks lost money when it became clear that the buyers had not put up the promised down payments, did not live in the units, and had no intention of paying off the loans. (The units were not worth enough themselves to cover the balances.)

Manglardi pleaded guilty to wire fraud. A jury convicted Wojtas, David Belconis, and Karin Ganser of several fraud-related crimes. Ganser has not appealed. Wojtas appeals only his sentence. Belconis contends on appeal that the evidence does not support his convictions.

Wojtas was sentenced to 66 months' imprisonment, well below the bottom end of the range recommended by the Sentencing Guidelines (108 to 135 months). Despite receiving this favorable treatment, he contends that the sentence was unreasonably high, because Manglardi fared better: 24 months. That's an unwarranted disparity, Wojtas insists. See 18 U.S.C. §3553(a)(6).

Disparity yes, unwarranted no. Manglardi pleaded guilty and received a discount for accepting responsibility and assisting the prosecutors. Wojtas did not get these discounts and has only his own decisions to blame. We have held many times that defendants convicted after trial are not comparable, for sentencing purposes, to defendants who plead guilty and assist the prosecution. See, e.g., *United States v. Solomon*, 892 F.3d 273, 279 (7th Cir. 2018). The district judge gave careful consideration to Wojtas's other arguments, and he has not come close to persuading us that a 40% discount off the low end of the Guidelines range is an unreasonably high sentence. The United States, had it taken a cross-appeal, would have had a stronger argument that it is too low.

Belconis received an even bigger break—his sentence is one day in prison—and does not protest on that account. (Nor does the United States.) He does contend, however, that he was not in on the fraud. He asserts that he was just a lawyer representing buyers at closings (and, for 19 closings, the provider of services through his title company). He

moved for a judgment of acquittal under Fed. R. Crim. P. 29 and a new trial under Fed. R. Crim. P. 33. The district judge denied both motions, explaining in a careful opinion why the evidence is sufficient to permit reasonable jurors to find that Belconis recognized the fraudulent nature of the transactions in which he participated. Indeed, Belconis even told a federal agent that he thought it normal for buyers to lie about the fact or amount of their down payments, and that he saw no problem facilitating this practice—although buyers with none of their own money on the line are less likely to repay loans and more likely to seek excessive loans. The district court's discussion can be found at pages 7–8 and 10–11 of the opinion dated June 25, 2018. We agree with this analysis, which need not be repeated.

Belconis also contends that the district court constructively amended the indictment with respect to five counts of the charges against him. But a jury could not agree on a verdict with respect to these counts, all of which the prosecutor dismissed. Having prevailed outright on these counts, Belconis is not entitled to contend that he should have won for a different reason.

AFFIRMED